## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYREESE HAWTHORNE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 11-682-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

Tyreese Hawthorne. *Pro se* petitioner.

James T. Wakley, Delaware Department of Justice, Wilmington, Delaware. Counsel for
Respondents.

## MEMORANDUM OPINION

$\underline{\qquad}$ 23, 2014
Wilmington, Delaware

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Tyreese Hawthorne ("Hawthorne"). (D.I. 3; D.I. 7) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

During the afternoon of April 3, 2006, co-defendants Lawrence Michaels and Andre Wright were riding their motorcycles around Philadelphia and stopped to play a game of dice with Tyreese Hawthorne. Hawthorne then asked petitioner and Wright to go for a ride with him, because he (Hawthorne) needed to "pick up his money." Hawthorne also asked Saladine Pitts, an acquaintance, to drive them in his car. The four drove to Houlihans, a restaurant in Philadelphia, and upon arriving there, Hawthorne exited Pitts' car and got into a car driven by Rasheem Sims. About four minutes later, Hawthorne returned to Pitts' car, which then followed Sims down I-95 to Bear, Delaware. Sims parked his car, and Pitts parked his car a distance away.

While Sims was walking back to his apartment, he heard people running behind him. The running individuals turned out to be the defendants and Pitts (collectively the "robbers"), who attacked Sims from behind, struck him several times with a metal object, went through Sims' pockets and then led him, at gunpoint, to his apartment. When the group reached the door of the apartment, Sims rang the doorbell. Crystal Donald, Sims' girlfriend, answered the door. When she saw that Sims was bleeding from a head wound, she began screaming. The robbers

---

[1]The factual history is recounted from the Delaware Supreme Court's opinion in *Michaels v. State*, 970 A.2d 223, 226 (Del. 2009). The procedural history is summarized from the State's answer (D.I. 16) and the state court record (D.I. 18).

pushed their way into the apartment, forced Sims into his bedroom, and began searching for money.

Donald was led into the kitchen at gunpoint and robbed of her jewelry. Tashika Townsend, Donald's sister, was forced into her bedroom and then into the kitchen. Donald's daughter was also brought into the kitchen. Shortly thereafter, one of the robbers opened the door and yelled "the law is here!" The robbers then forced Donald to take them to the balcony. From there, the robbers forced their way into the adjoining apartment, threatened its resident, Daniel Moran, and demanded that he let them out. While the robbers were threatening Moran, a laser light shined into the apartment, causing the robbers to panic. Three of the robbers fled deeper into Moran's apartment.

At that point, New Castle County Police Department ("NCCPD") officers burst into Moran's apartment and apprehended Pitts in the living room. They found the other robbers hiding in various places in that apartment – Wright under a mattress in a bedroom, Hawthorne in a bathtub, and Michaels under a pile of clothing in a closet. The police took all four robbers into custody, searched them, and recovered property belonging to Sims, Donald, and Townsend. The police also found, on Hawthorne's person, a "RAZR" cell phone that belonged to Townsend. Later that night the officers recovered two guns - one on the deck behind Moran's apartment and another on the ground behind the building. A third gun was found in Moran's apartment several days later.

Hawthorne, Michaels, and Wright were arrested for the above crime, and Hawthorne was subsequently indicted with, *inter alia*, three counts of first degree robbery, two counts of second degree burglary, and first degree kidnapping. The three men were tried together in March 2008,

2

after which a Superior Court jury convicted Hawthorne of two counts of first degree robbery, one count of second degree burglary (as a lesser included offense of first degree burglary), two counts of second degree burglary, and first degree kidnapping. The Superior Court sentenced him to an aggregate of thirty-five years of incarceration, suspended after twenty-eight years for a period of probation. The Delaware Supreme Court affirmed Hawthorne's convictions and sentence on direct appeal.

In February 2010, Hawthorne filed a *pro se* motion for post-conviction review pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), and then subsequently filed a counseled amended Rule 61 motion in January 2011. *See State v. Hawthorne*, ID No. 0704004328, Cooch J. (Del. Super. Ct. Feb. 25, 2011). The Superior Court considered the allegations in both motions and denied relief. *Id.* The Delaware Supreme Court affirmed that decision. *See Hawthorne v. State*, 26 A.3d 214 (Table), 2011 WL 2905579 (Del. Jul. 20, 2011).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to

3

ensure that state-court convictions are given effect to the extent possible under law." *Bell v.*

*Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the
>   applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v.*

*Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D.

Del. Dec. 22, 2000). To "fairly present" a claim, a petitioner "must present a federal claim's

factual and legal substance to the state courts in a manner that puts them on notice that a federal

4

claim is being asserted;" presenting a "somewhat similar state-law claim" will not suffice. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless,* 172 F.3d at 260; *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

5

*Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784-85 (2011). As

---

[1]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, whether reviewing a habeas claim *de novo* or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Hawthorne's timely filed petition asserts the following four grounds for relief: (1) the trial court violated Hawthorne's rights under the Confrontation Clause by preventing Hawthorne's trial counsel from questioning Hawthorne's "accuser" after one of his co-defendant's counsel objected to the questioning; (2) trial counsel provided ineffective assistance by ending his questioning of the alleged victim after one of his co-defendant's counsel objected to the questioning; (3) Hawthorne's Sixth Amendment right to counsel was violated when the trial court failed to rule on his motion for new counsel prior to trial; and (4) the trial court's failure to rule on his motion for new counsel violated Hawthorne's Sixth Amendment right to self-representation. The court will review these claims *in seriatim.*

7

## A. Claim One: Confrontation Clause Violation

Midway through the trial, counsel for co-defendant Michaels orally moved to sever

Michaels' case from that of Hawthorne and co-defendant Wright, because Hawthorne's trial

counsel was likely to ask the chief investigating officer, Detective Williamson, about out-of-

court statements the victim Crystal Donald made that were attached to a search warrant

application. The trial court denied Michael's severance request, but did allow him to supplement

his oral motion with a written submission.

The following day, Hawthorne's trial counsel began to ask Detective Williamson about

Donald's out-of-court statements. Michael's counsel objected on hearsay and unfair prejudice

grounds. Hawthorne's counsel agreed that the statements he sought to introduce constituted

hearsay (because an officer other than Detective Williamson had taken Donald's statements), and

indicated that he may call the officer who took Donald's out-of-court statement to testify. The

trial court, however, "ruled that it would defer ruling on the issue of whether such questioning

would unfairly prejudice the codefendant, instructing counsel that the issue would be resumed at

a later point." (D.I. 16 at 8) In the end, trial counsel did not call the other police officer to

testify.

Now, in claim one, Hawthorne asserts that he was "not able to confront his accuser at

trial due to the trial judge's stopping defense counsel from continuing a line of questioning." It

is not clear if the term "accuser" refers to Detective Williamson, the police officer who

memorialized Crystal Donald's out-of-court statements, or Crystal Donald herself. Regardless of

the person to whom the term refers, the court concludes that the claim lacks merit. In *Crawford*

*v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's

8

Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination." *Id.* at 53-54. The testimonial statements at issue here were Crystal Donald's out-of-court statements, and she actually testified and was extensively cross-examined by trial counsel. Therefore, Hawthorne's rights under the Confrontation Clause were not violated.[1] Accordingly, the court will deny claim one as meritless.

## B. Claim Two: Ineffective Assistance of Counsel

In claim two, Hawthorne contends that trial counsel erred by abandoning his cross-examination of the "victim" after co-defendant Michael's defense counsel objected. He states that "counsel never tried to complete the line of questioning that would have shown that the witness' accounts of the event changed as to identification purposes." (D.I. 3 at 5) Hawthorne also asserts that trial counsel should have moved to sever his case from that of his co-defendants once the objection was lodged. The Superior Court denied these arguments as meritless, and the Delaware Supreme Court affirmed that decision. As such, Hawthorne will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established law governing the instant ineffective assistance of counsel claim is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its

---

[1]To the extent Hawthorne contends he was prevented from questioning Detective Williamson, he has mischaracterized the facts. Trial counsel was only prevented from seeking to elicit inadmissible hearsay from Detective Williamson – he was not prevented from questioning Detective Williamson. Further, to the extent Hawthorne contends he was prevented from questioning the police officer who memorialized Crystal Donald's out-of-court statements, there was no violation of his confrontation rights because, once again, Donald herself testified at trial and was extensively cross-examined by trial counsel.

9

progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard when it affirmed the Superior Court's denial of the arguments raised in claim two. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claim two as meritless involved a reasonable application of *Strickland.* When performing this inquiry, the court must review the Delaware Supreme Court's

10

decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *Harrington*, 131 S.Ct. at 788. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

During Hawthorne's Rule 61 proceeding, the Superior Court found that trial counsel did not provide ineffective assistance by failing to file a motion to sever because trial counsel actually filed a severance motion that the trial court denied. The Superior Court also rejected Hawthorne's contentions that trial counsel's alleged failure to continue cross-examining the "victim" amounted to ineffective assistance, because "trial counsel did not "abandon" a line of questioning; rather, he responded in accord with the Court's ruling on an objection made by counsel for a codefendant. Such conduct cannot be considered to fall below an objective standard of reasonableness."[2] *Hawthorne*, ID No. 0704004328, at 21-22.

After viewing the Delaware Supreme Court's affirmance of the Superior Court's rejection of claim two through doubly deferential lens, the court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* in its decision. Once again, the court notes that it is not clear if the term "victim" as used by Hawthorne in this claim refers to Crystal Donald or Detective Williamson, because the only objection the court has found in the state court transcripts is the objection that was made during trial counsel's cross-examination of Detective Williamson; the court has not found any objection that was made during counsel's cross-

---

[2]In denying this second argument, the Superior Court noted that Hawthorne's allegation was "not an accurate characterization of the trial record." *Hawthorne*, ID No. 0704004328, at 21. Although not entirely clear, the Superior Court's assertion regarding Hawthorne's mischaracterization of the record appears to be based on the fact that the complained-about-objection was not made during trial counsel's cross-examination of Crystal Donald but rather, during trial counsel's cross-examination of Detective Williamson.

examination of Crystal Donald. Regardless, Hawthorne's conclusory and unsupported arguments fail to rebut the strong presumption that trial counsel's representation was professionally reasonable. First, counsel actually filed a motion to sever Hawthorne's case, and cannot be deemed ineffective just because that motion was denied. In turn, to the extent Hawthorne believes counsel should have continued cross-examining Detective Williamson despite the objection made by his co-defendant's counsel, trial counsel simply was not ineffective for complying with the trial court's decision to sustain the objection. And finally, if Hawthorne's instant complaint concerns counsel's cross-examination of Crystal Donald, there is no indication in the record that any objection was lodged during trial counsel's cross-examination of Crystal Donald. In fact, the record reveals that trial counsel thoroughly and persistently cross-examined Crystal Donald about her identification of Hawthorne without interruption. Accordingly, the court will deny claim two for failing to satisfy § 2254(d).

## C. Claim Three: Trial Court's Failure to Address Hawthorne's Motion for New Counsel Violated his Sixth Amendment Right to Counsel

In November 2007, prior to trial, Hawthorne filed a *pro se* motion for new counsel, alleging that he and defense counsel had an "unresolvable conflict." (D.I. 18, App. to Appellant's Op. Br. in *Hawthorne v. State*, No. 358, 2008, at A-038 to a-040). Hawthorne's motion for new counsel complained that appointed trial counsel failed to file pre-trial motions, including a motion to suppress evidence. For his relief, Hawthorne asked to "have counsel removed or the conflict resolved." *Id.* at A-040. However, because Hawthorne was represented by counsel, the Superior Court did not review the motion; rather, the prothonotary sent the motion to trial counsel "for any appropriate action," (D.I. 18, Del. Super. Ct. Dkt., Entry No. 22)

12

In February 2008, and still prior to trial, Hawthorne sent a letter to the judge he believed

had been assigned to his case, complaining that his motion for new counsel was still pending.

(D.I. 18, App. to Appellant's Op. Br. in *Hawthorne v. State*, No. 358, 2008, at A-055)

Hawthorne also stated that he had filed a disciplinary complaint with the Office of Disciplinary

Counsel, dated December 7, 2007, and a complaint to the Delaware Bar Association dated

February 4, 2008, which had not yet been resolved. *Id.* at A-055-56. The letter then proceeded

to describe Hawthorne's overall complaints with defense counsel, namely, that Hawthorne had

not authorized the continuance of the trial, and that defense counsel "refused to acknowledge any

of [his] requests, objectives, objections, or motions, all of which contain constitutional claims

and merits." *Id.* at A-056. The judge to whom the letter was addressed responded to Hawthorne

via a letter, stating:

> Contrary to what you have been told, I am not assigned to your case. In fact, I have other
> court commitments that week. The judge who will preside over your trial will not be
> assigned until February 26, 2008. **You may present your motions to the assigned
> judge. You should be aware, however, that the court does not generally allow a
> defendant who is represented by conflict counsel at State's expense to have a new
> attorney appointed based on a defendant's dissatisfaction with his appointed
> attorney.**

(D.I. 18, Del. Super. Ct. Crim. Dkt., Entry No. 41)(emphasis added)

The jury trial commenced on February 26, 2008 and lasted for nine days. (D.I. 18, Del.

Super. Ct. Crim. Dkt. Entry Nos. 44, 46) Hawthorne did not re-assert his complaints about trial

counsel to the trial judge assigned to his case, and the trial court never formally addressed

Hawthorne's previously filed written complaints about trial counsel. On direct appeal,

Hawthorne did not present a claim regarding the trial court's failure to formally address his *pro

se* motion for new trial.

13

Rather, in his Rule 61 motion, Hawthorne argued that the trial court's failure to formally address his motion for new trial and/or conduct a hearing on the motion constituted a denial of his constitutional right of access to counsel. Defense counsel responded to this allegation in his Rule 61 affidavit, stating that, "based upon [his] recollection and belief, the Court addressed Hawthorne's concerns about counsel before jury selection." (D.I. 18, App. to Appellant's Op. Br. in *Hawthorne v. State*, No. 358, 2008, at A-26 to A-27) The State also responded to Hawthorne's allegation and stated that it believed the trial court had addressed Hawthorne's written request for new counsel during jury selection. *See Hawthorne*, ID No. 0704004328, at 6-7. However, the Superior Court determined that there were no transcripts of a pre-trial colloquy regarding Hawthorne's dissatisfaction with his defense counsel and, therefore, held an evidentiary hearing on the issue. The Superior Court specifically noted that the purpose of the hearing was to "reconstruct . . . the colloquy, if it occurred, on the subject of a discussion that the Court had with Defendant about his feelings about trial counsel." *Hawthorne*, ID No. 0704004328, at 9. Counsel was appointed to represent Hawthorne at the hearing. After the evidentiary hearing, Hawthorne's new counsel filed an amended Rule 61 motion, supplementing Hawthorne's complaint regarding the Superior Court's failure to address his motion for new counsel by citing to *Felder v. Goord*, 564 F. Supp. 2d 201 (S.D.N.Y. 2008) and implicitly asserting that the trial court erred in failing to conduct a hearing on Hawthorne's motion. *Hawthorne*, ID NO. 0704004328, at 11-12.

The Superior Court ultimately denied Hawthorne's argument regarding the trial court's failure to rule on his motion for new counsel after concluding that Hawthorne failed to establish that trial counsel had provided ineffective assistance. In reaching this decision, the Superior

14

Court noted that: (1) the Superior Court itself and the attorneys representing all the co-defendants did not have any recollection of Hawthorne expressing dissatisfaction with trial counsel during the course of the trial; (2) in his Rule 61 affidavit, trial counsel confirmed that he addressed Hawthorne's dissatisfaction during the course of the representation and that he repeatedly advised Hawthorne that he could elect to represent himself if was not happy with trial counsel's representation, yet Hawthorne elected to continue with counsel as his attorney; (3) during the court's pre-trial colloquy with all of the defendants to confirm their knowing rejection of the plea offer, Hawthorne never communicated or suggested that he was dissatisfied with trial counsel; and (4) immediately after the colloquy regarding the rejection of the plea offer, Hawthorne asked to address the trial court regarding a previously filed motion to dismiss for a speedy trial violation, and he did not request to address the trial court about counsel's performance. The Superior Court also mentioned the letter to Hawthorne from the judge he mistakenly believed had been assigned to his case, and found significance in the fact that that judge had advised Hawthorne that his dissatisfaction with counsel would not be sufficient for the appointment of new counsel. On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's denial of Hawthorne's argument regarding the failure to rule on his motion for new trial.

Now, in claim three, Hawthorne contends that the trial court "abused its discretion" by not ruling on his pro-se motion for new counsel, and that the court's failure to rule on the motion violated his "right to access to counsel." (D.I. 3 at 8) Given the Delaware state courts' adjudication of the claim, Hawthorne will not be entitled to relief unless the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

15

Pursuant to the Sixth Amendment of the United Sates Constitution, an indigent state criminal defendant is guaranteed the assistance of counsel at every critical stage of his criminal proceeding *See Gideon v. Wainwright*, 372 U.S. 335, 342-45 (1963). It is well-settled that this right to counsel includes the right to competent, effective, and conflict-free representation. *See Strickland*, 466 U.S. at 668; *Wood v. Georgia*, 450 U.S. 261, 271 (1981). However, the Sixth Amendment right to counsel does not guarantee a meaningful relationship between a criminal defendant and counsel. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). Nor does an indigent defendant have the right to counsel of his choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 151 (2006)(the "right to counsel of choice does not extend to defendants who require counsel to be appointed for them. "); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 625 (1989).

Extending the foregoing principles, the Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, [] and against the demands of its calendar." *Gonzalez-Lopez,* 548 U.S. at 152. However, the Supreme Court has not addressed the level of inquiry required by a state court when a defendant presents a motion for substitute appointed counsel.[3] Given the absence of any Supreme Court precedent

---

[3]While instructive, the Third Circuit's decisions regarding the type of inquiry a federal district court must engage in when presented with a motion for substitute counsel filed by a federal criminal defendant do not constitute clearly established Federal law for federal habeas review of such motions filed by state criminal defendants. Nevertheless, even if the court were to review the trial court's failure to rule on Hawthorne's motion for new counsel under the requirements established in *United States v. Leveto*, 540 F.3d 200, 208 (3d Cir. 2008), *Untied States v. Welty*, 674 F.2d 185 190 (3d Cir. 1982), and *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995), the court would still conclude that claim three lacks merit. Pursuant to this line of cases, a district court in the Third Circuit is not required to engage in a formal inquiry or colloquy regarding a defendant's request for substitution of counsel when the defendant has been given an opportunity to provide the court with the reason for his dissatisfaction with counsel, or the

16

addressing the inquiry required for a motion for substitution of appointed counsel presented by a

criminal defendant in state court, the court cannot conclude that the Delaware Supreme Court's

rejection of claim three was contrary to, or an unreasonable application of, clearly established

Federal law. *See, e.g., Peterson v. Smith*, 510 F. App'x 356, 366-67 (6th Cir. 2013).

The court acknowledges that many federal habeas courts presented with a state court's

failure to inquire into a motion for substitute appointed counsel issue have not based their

---

reasons for the request and rationale for the decision are apparent from the record. *See Leveto,* 540 F.3d at 208; *Welty*, 674 F.2d at 190. All that is required is that the district court engage in some inquiry to ascertain the reasons for the defendant's dissatisfaction to determine if good cause for substitution actually exists. *See United States v. Peppers*, 302 F.3d 120, 133 n.12 (3d Cir. 2002). A defendant's mere dissatisfaction with counsel also does not constitute good cause for substitution of counsel. *See United States v. Moses,* 58 F. App'x. 549, 555 (3d Cir. Feb. 3, 2003).

Here, Hawthorne was afforded an opportunity to state his reasons for seeking substitute counsel via the statements contained in his motion for new counsel and the letters he filed in the Superior Court. Although there was no formal hearing or order disposing of Hawthorne's motion for new counsel, there was, in fact, "some inquiry" into his allegations. The Delaware Superior Court judge to whom Hawthorne sent his February 5, 2008 letter responded to his allegations and explained that new counsel would not be appointed to an indigent defendant just because that defendant was dissatisfied with appointed counsel. That same judge also informed Hawthorne that he could present his motion for new counsel when a judge was assigned to preside over his case. However, once his case was assigned to a trial judge, Hawthorne did not re-assert his alleged dissatisfaction with defense counsel, nor did he re-assert his request for new counsel. Interestingly, in his Rule 61 affidavit, counsel explains that he routinely met with Hawthorne upon receipt of Hawthorne's complaints of his performance and that, after these meetings, Hawthorne elected to continue with counsel's representation. Counsel's Rule 61 affidavit also states that he repeatedly advised Hawthorne that he (Hawthorne) could elect to represent himself if he was dissatisfied with counsel's representation.

Even when liberally construed, the complaints raised in Hawthorne's letters and motion fail to demonstrate a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with defense counsel sufficient to constitute good cause for the substitution of counsel. Rather, the statements contained therein amount to nothing more than an expression of Hawthorne's disagreement with defense counsel over pre-trial legal strategy, and therefore, failed to constitute good cause for substitution of counsel. Hence, even under Third Circuit precedent, the trial court's failure to conduct a more formal inquiry into Hawthorne's motion for new counsel would not warrant habeas relief.

17

decision on the absence of any Supreme Court precedent. Rather, those courts have concluded that the ultimate question in a federal habeas proceeding is not whether the state trial court properly reviewed or denied a motion for substitute appointed counsel but, rather, whether the petitioner's Sixth Amendment right to effective assistance of counsel was violated. *See Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000); *see also Tolliver v. Dallman,*, 57 F.3d 1070 (Table), 1995 WL 364176, at *3-4 (6th Cir. June 16, 1995); *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981); *Harlan v. Lafler*, 2011 WL 6131091, at *7 (E.D. Mich. Dec. 8, 2011)(collecting cases); *Willis v. Lafler*, 2007 WL 3121542, at *31 (E.D. Mich. Oct. 24, 2007)(any error in trial court's disposition of defendant's motion for substitute counsel is harmless unless defendant can establish an ineffective assistance of counsel claim under *Strickland*.). Exercising prudence, the court will conduct the same inquiry for claim three in this proceeding.

Here, the Superior Court considered the allegations of ineffective assistance Hawthorne raised in his Rule 61 motion and concluded that trial counsel had not performed deficiently. This court has already concluded that the Superior Court reasonably applied *Strickland* in denying Hawthorne's assertions regarding trial counsel's alleged failure to file a motion to sever and trial counsel's reaction to the trial court's sustaining an objection to hearsay and, therefore, will not re-visit these allegations at this juncture. Additionally, for the following reasons, the court concludes that the Delaware Supreme Court's affirmance of the Superior Court's denial of Hawthorne's additional allegations of ineffective assistance also involved a reasonable application of *Strickland*.

In his *pro se* motion for new counsel, Hawthorne asserted that counsel was not engaging in sound trial strategy, as demonstrated by counsel's failure to file any pre-trial motions,

18

including a suppression motion. Hawthorne also stated that his alleged "conflict" with counsel infringed upon the "constitutional rights that guarantee not just counsel but effective counsel under the *Strickland v. Washington* analysis." (D.I. 18, App. to Appellant's Op. Br., No.358, 2008, at A-038) Hawthorne's letters to the Superior Court complained that he never authorized defense counsel to continue any proceedings on his behalf.

Even when liberally construed, these complaints amount to nothing more than an expression of Hawthorne's disagreement with defense counsel over pre-trial legal strategy. Significantly, Hawthorne did not reassert these "complaints" once his case was assigned to the judge overseeing his trial. In his Rule 61 affidavit, counsel explained that he and Hawthorne repeatedly met and discussed Hawthorne's concerns about counsel's decisions, and that Hawthorne elected to have counsel continue to represent him. Viewed in this context, Hawthorne's failure to reassert his request indicates that the meetings with counsel successfully eliminated Hawthorne's concerns about counsel's representation such that the previously complained about "conflict" was removed. As such, the court concludes that Hawthorne's pre-trial allegations regarding counsel's failure to file pre-trial motions and counsel's actions regarding the continuance of the trial fail to rise to the level of ineffective assistance of counsel.

Hawthorne's Rule 61 motion also alleged that trial counsel was ineffective for: failing to object to the introduction of blood evidence pursuant to Delaware Rule of Evidence 403; for failing to diligently seek a mistrial; and for failing to effectively communicate the advisability of accepting the State's plea offer. The Superior Court rejected these allegations after noting that trial counsel's Rule 61 affidavit explicitly denied Hawthorne's allegations and after finding that Hawthorne failed to establish prejudice resulting from counsel's alleged inaction. More

specifically, the Superior Court denied as conclusory Hawthorne's contention about counsel's failure to object to the admission of certain blood evidence. The Superior Court explained that Hawthorne failed to support his contention with "any clarification as to the relative probative value of this evidence vis-à-vis its alleged prejudicial effect," and, therefore, did not substantiate a claim that the blood evidence would have satisfied the standard for exclusion under D.R.E 403 even if counsel had raised such an objection. *Hawthorne*, ID No. 0704004328, at 22-23.

The Superior Court also rejected Hawthorne's contention that counsel did not effectively communicate the advisability of accepting the plea offer because Hawthorne never alleged that he would have accepted the State's plea offer. In turn, the Superior Court reviewed the transcript of the plea colloquy, and noted that Hawthorne specifically stated under oath that he understood the terms of the plea offer and the sentence included therein and that he understood the potential sentence if convicted at trial and, nevertheless, it was his desire to reject the plea offer and proceed to trial. *Id.* at 20.

Finally, on direct appeal, the Delaware Supreme Court held the Superior Court properly denied the first motion for mistrial. As such, Hawthorne's conclusory and vague contention that trial counsel "failed to diligently seek" a mistrial fails to establish that counsel's performance was deficient or prejudiced him.

Based on the foregoing, the court concludes that the Delaware state courts reasonably applied *Strickland* in denying Hawthorne's allegations of ineffective assistance. Having determined that Hawthorne received constitutionally effective assistance of counsel, the court cannot conclude that the Delaware state courts' decision that the trial court's failure to formally rule on Hawthorne's pre-trial motion for new counsel did not violate his right to counsel was

20

either contrary to, or an unreasonable application of, clearly established Federal law. Accordingly, the court will deny claim three.

## D. Claim Four: Right to Self-Representation Violated

In its answer, the State contends that a fair reading of Hawthorne's petition suggests he also asserts that the Delaware trial court violated Hawthorne's right to self-representation by failing to rule on his motion for new counsel. Although the court does not interpret any of the claims raised in Hawthorne's original petition or amended petition as raising such an argument, Hawthorne's reply to the State's answer does appear to assert a vague claim that the trial court's failure to inquire into his motion for new counsel also violated his right to self-representation. (D.I. 21 at 7) Specifically, Hawthorne asserts that "he would not have gone to trial with defense counsel had the judge protected his rights and given him the hearing advising of the alternate rights," and insinuates that he may have been trying to waive his right counsel via his motion for new trial. *Id.* Given these statements, the court construes Hawthorne's reply as presenting a fourth claim asserting that the trial court's failure to conduct a formal inquiry into Hawthorne's motion for new counsel also denied him his right to self-representation.

The record reveals that Hawthorne did not exhaust state remedies for claim four because he never raised the self-representation issue to the Delaware Supreme Court on direct appeal or in his Rule 61 motion to the Superior Court, and he did not fairly present the claim to the Delaware Supreme Court on post-conviction appeal.[4] Any attempt to present this particular

---

[4]Hawthorne's counseled opening brief on post-conviction appeal states that "Hawthorne has not on the record requested to proceed *pro se* [but] he did request new counsel." (D.I. 18, Appellant's Op. Br. in *Hawthorne v. State*, No.134,2011 at 7) However, Hawthorne's post-conviction appellate brief then proceeds to assert that "*pro se* representation is an alternative to the counsel he was displeased with" which was never presented to Hawthorne because he was

21

allegation in a new Rule 61 motion would be time-barred under Rule 61(i)(1) and barred as repetitive under Rule 61(i)(2), which means that this allegation should be treated exhausted but procedurally defaulted. *See Kellum v. Pierce*, __ F.Supp.2d __, 2014 WL 975698, at *10 (D. Del. Mar. 7, 2014). Given these circumstances, the court cannot review the merits of claim four absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Hawthorne does not assert, and the court cannot discern, any cause for his default of the instant self-representation claim. In the absence of cause, the court need not address the issue of prejudice. Nevertheless, Hawthorne cannot demonstrate prejudice sufficient to excuse his default because his vague self-representation argument lacks merit. Although "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so,"[5] the defendant must assert his right to proceed *pro se* "affirmatively and unequivocally" before a court is obligated to inquire into the voluntariness and

---

denied a hearing on his motion for new counsel. (D.I. 18, Appellant's Op. Br. in *Hawthorne v. State*, No.134,2011 at 7) To the extent this vague assertion should be interpreted as asserting an argument that Hawthorne's right to self-representation was violated, the court concurs with the State's contention that it was not "fairly presented" as a constitutional violation to the Delaware Supreme Court. Notably, Hawthorne's *pro se* Rule 61 motion and his counseled amended Rule 61 did not even remotely raise an issue about Hawthorne's right to self-representation. In turn, Hawthorne's counseled post-conviction response to the State's procedural default argument states that Hawthorne's "arguments are not barred procedurally as they were preserved in the lower court's opinion and order." (D.I. 18, Appellant's Reply. Br. in *Hawthorne v. State*, No.134,2011 at 2) Since the self-representation argument was not raised in Hawthorne's Rule 61 motions and was therefore not discussed in the Superior Court's opinion and order, any new and vague allegation regarding Hawthorne's right to self-representation in his post-conviction appellate brief was not included in the "preserved" claims mentioned by post-conviction counsel. Thus, given Hawthorne's failure to satisfy the "fair presentation" requirement of the exhaustion doctrine, the court concludes Hawthorne did not exhaust state remedies for the instant self-representation claim.

[5]*Faretta v. California*, 422 U.S. 806, 807 (1975).

understanding of such a request. *United States v. Peppers*, 302 F.3d 120, 129-31 (3d Cir. 2002). Hawthorne has failed to satisfy this requirement. None of Hawthorne's filings in his criminal proceeding in the Delaware courts even remotely suggested that he wanted to discharge his counsel and proceed to trial *pro se*. Additionally, in his Rule 61 affidavit, counsel stated that he repeatedly explained to Hawthorne that he could choose to represent himself at trial, yet Hawthorne never availed himself of that right. In short, considering that Hawthorne never explicitly requested to represent himself despite being informed about this option by defense counsel, Hawthorne cannot demonstrate that the trial court's failure to inquire into his motion for new counsel "worked to his actual and substantial disadvantage" such that he was prejudiced by the default of this claim.

Finally, the court concludes that cannot excuse Hawthorne's default of this claim under the miscarriage of justice exception, because Hawthorne has failed to provide new reliable evidence that can establish his actual innocence. Accordingly, the court will deny claim four as procedurally barred.

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not

23

required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Hawthorne's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Hawthorne's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.